UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:17-CV-00186-BR

| | |
|---|---|
| OLIVIA NEAL, | ) |
| | ) |
|       Plaintiff, | ) |
|     v. | )    ORDER |
| | ) |
| UNIVERSITY OF NORTH CAROLINA | ) |
| and EAST CAROLINA UNIVERSITY, | ) |
| | ) |
|       Defendants. | ) |

This matter is before the court on the motion to dismiss filed by defendants University of North Carolina ("UNC") and East Carolina University ("ECU") (collectively "defendants"). (DE # 9.) The motion has been fully briefed and is therefore ripe for disposition.

## I. FACTS

Plaintiff enrolled in the Masters of Social Work Program (the "MSW Program") at ECU's School of Social Work (the "SOSW") in the fall of 2012. (Compl., DE # 1-1, ¶ 9.) Before enrolling in the MSW Program, plaintiff disclosed to the SOSW that she had an existing diagnosis of Attention Deficit/Hyperactivity Disorder ("ADHD"). (Id. ¶ 29.) In the fall of 2014, plaintiff began suffering some episodes of mild mania. (Id. ¶ 41.) Her mental state and associated behaviors were noticed by several faculty members in the SOSW. (Id. ¶¶ 42-45.) Based on the faculty's concerns regarding plaintiff's "erratic behavior" and "disorganized and hard to follow" expressions, (id. ¶¶ 43, 45), her performance was reviewed by the Academic and Retention Committee ("A&R Committee"), which makes recommendations to the SOSW concerning whether a student should be retained in the MSW Program, (id. ¶¶ 46-47).

On 6 October 2014, the A&R Committee convened and decided to retain plaintiff in the program. (Id. ¶ 51.) The A&R Committee "determined that while [p]laintiff exhibited signs of mental health issues, the behaviors reported did not impact professional requirements or impair [p]laintiff from continuing in the MSW [Program]." (Id.) The A&R Committee also suggested that plaintiff be referred to "ECU Cares," a university service offering counseling for mental health issues. (Id. ¶ 52.)

By the beginning of the spring 2015 term, plaintiff had completed 51 of the required 60 credits hours of study for the MSW degree. (Id. ¶ 12.) In order to complete her required coursework, plaintiff still had to pass two courses: (1) a once-a-week course taught by Professor Intae Yoon, and (2) a once-a-week seminar taught by Professor Lena Carawan based around a field internship at a homeless shelter in Goldsboro, North Carolina. (Id. ¶¶ 60-62.) Professor Nancy Pierson, the Director of Field Education for the SOSW, was assigned as plaintiff's field instructor to provide weekly supervision for the field internship. (Id. ¶¶ 66-67.)

On 10 February 2015, while interacting with Professor Yoon, plaintiff "experienc[ed] a degree of mania, and her communications were dissociative and garrulous." (Id. ¶ 68.) This manic episode was witnessed by Professor Pierson. (Id.) In the days following this episode, administrators and faculty members shared their concerns about plaintiff's mental health and its potential effect on her ability to meet the SOSW's expectations for performance in the classroom and field setting. (Id. ¶¶ 69-71.) Dr. Kerry Littlewood, Coordinator of the MSW Program and Assistant Director of the SOSW, responded to these concerns in an email on 18 February 2015, in which she noted that "it might be a violation of FERPA for the faculty to be discussing plaintiff's mental health and medication in relation to her performance in the MSW program." (Id. ¶ 72.) Dr. Littlewood went on to state that plaintiff should be held to the same academic

standards as other students, and directed plaintiff's professors to advise her if they had any concerns about plaintiff's academic performance. (Id. ¶¶ 72-73.)

Later on 18 February 2015, Professor Carawan wrote an email to the faculty group praising plaintiff's academic work but expressing concerns about plaintiff's mental condition. (Id. ¶¶ 64, 74.) In that email, Professor Carawan noted "I know that we have to consider Olivia, the clients she sees and will see, our school, and the university and last but not least the MSW Degree." (Id. ¶ 74) Professor Yoon responded that plaintiff would likely pass his course but that the faculty had to consider their "gatekeeping function." (Id. ¶ 75.) Professor Pierson also wrote to the faculty group, stating that plaintiff "has been on track except for last Tuesday," but "if she can't sustain it, we cannot pretend that she is functioning okay." (Id. ¶ 76.) Thereafter, Dr. Littlewood sent an email asking the faculty to continue to keep each other apprised of any concerns involving plaintiff's academic performance, well-being, and inappropriate behavior. (Id. ¶ 77.)

The following week, on 26 February 2015, plaintiff was "involved in an automobile accident, at which time she was found to be in a manic state." (Id. ¶ 80.) Plaintiff was admitted to Holly Hill mental hospital in Raleigh, North Carolina, where she was diagnosed with Manic Depressive and/or Bipolar Disorder. (Id. ¶¶ 35, 80.) While at Holly Hill, plaintiff was not allowed to communicate with persons on the outside. (Id. ¶ 81.) However, plaintiff alleges that two SOSW administrators—Dr. Littlewood and Dr. Sheila Bunch, Director of the MSW Program—were informed of her hospitalization by 3 March 2015, the first day of ECU's spring break. (Id. ¶ 84.) Plaintiff was released from Holly Hill on 13 March 2015. (Id. ¶ 81.) During her 15-day hospitalization, plaintiff missed one session of each of her two classes. (Id. ¶ 82.)

On the day of plaintiff's release from the hospital, Dr. Littlewood notified plaintiff via email that she was required to attend an A&R Committee meeting at 9:00 a.m. on 16 March 2015. (Id. ¶ 91.) Plaintiff admits that she did not attend the A&R Committee meeting, citing her inability "to access her university email until the evening of March 16, 2015." (Id. ¶¶ 92, 98.) At that time, "plaintiff immediately reminded Dr. Littlewood that she had been in the hospital and requested that the A&R meeting be rescheduled to the following afternoon, Tuesday March 17, 2015." (Id.) In response to plaintiff's request, Dr. Littlewood forbade plaintiff from attending her scheduled classes, and set a meeting for the following afternoon to discuss the recommendation from the A&R Committee. (Id. ¶ 95.)

Upon meeting with Dr. Littlewood on 17 March 2015, plaintiff presented a letter from her psychiatrist stating that he had reviewed her case and supported her return to normal school activities. (Id. ¶ 96.) At that time, Dr. Littlewood gave plaintiff a written notice of dismissal. (Id. ¶ 97.) Per the notice, plaintiff's dismissal was based on her "fail[ing] to meet the standards and competencies required to perform as an ethical, professional, and knowlegeable [sic] social worker." (Id. ¶ 99.) The notice specifically cited incidents of tardiness in assignments and attendance, plaintiff's failure to be responsive to communications from the faculty during the period between 10 February and 16 March 2015, problematic behaviors observed by the faculty in the fall of 2014, the faculty's belief that plaintiff suffered from "impaired functioning," and the faculty's belief that plaintiff's "'mental health difficulties' would inevitably result in both her failure of the field course and the impairment of her professional judgment." (Id. ¶¶ 101-02.)

On 25 March 2015, plaintiff presented the SOSW with a letter from her psychiatrist explaining: (1) her diagnosis of Bipolar Disease; (2) that her ADHD medications may have contributed to her episodes of mania; (3) that treatment brought her symptoms under control; (4)

4

she was no longer manic; and (5) she was able to continue her coursework at ECU. (Id. ¶ 106.) The SOSW refused to reconsider its decision. (Id. ¶ 107.) Plaintiff then appealed the decision pursuant to the ECU Graduate School Appeal Policy. (Id. ¶ 108.) This policy provides that "no adverse recommendation or action" will be effective until an appeal is concluded. (Id.)

After filing her appeal, plaintiff continued to attend Professor Yoon's class, and she earned a passing grade of B. (Id. ¶ 109.) Plaintiff, however, was not allowed to continue her field internship or to attend the weekly companion seminar. (Id. ¶¶ 110-11.) While her appeal was pending, plaintiff continued to work at the homeless shelter on a volunteer basis. (Id. ¶ 111.) Plaintiff obtained the services of a licensed clinical social worker ("LCSW") to supervise her work at the shelter, and completed the required hours for the field internship. (Id. ¶ 112.) She also continued to turn in all of her assignments for the field seminar, but her assignments were never graded. (Id. ¶¶ 113-114)

In June 2015, the review panel upheld plaintiff's dismissal from the MSW Program. (Id. ¶ 117.) The review panel based its decision on its finding that plaintiff had exhibited "erratic and unprofessional behavior on February 10, 2015" and her "inconsistent communication with the SOSW faculty and supervisors." (Id. ¶¶ 117-18.)

On 14 March 2017, plaintiff commenced this action in the North Carolina Superior Court, Wayne County. (See Compl., DE # 1-1.) In her complaint, plaintiff alleges violations of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 et seq., and the Rehabilitation Act, 29 US.C. § 701 et seq., as well as a breach of contract under North Carolina common law.[1] (Id.) Plaintiff further alleges that she has suffered compensable economic

---

[1] Plaintiff's complaint also references the anti-retaliation provision under the ADA, 42 U.S.C. § 12203. (See Compl., DE # 1-1 ¶ 4.) In her memorandum in opposition to defendants' motion to dismiss, plaintiff states that her reference to a retaliation claim under the ADA was inadvertent and that she does not allege a claim for retaliation. (Pl.'s Resp., DE # 12, at 16.)

5

damages, including the "denial of employment opportunities," and non-economic damages in the form of humiliation, embarrassment and emotional distress, as a result of her dismissal from the MSW Program. (Id. ¶¶ 126-27.) On 19 April 2017, defendants removed the action to this court based on federal question jurisdiction and supplemental jurisdiction. (DE # 1.)

## II.  STANDARD OF REVIEW

Defendants move to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. (DE # 9.) A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a plaintiff's complaint. Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. When ruling on a motion to dismiss, the court "must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Twombly, 550 U.S. at 555-56). The court, however, "need not accept the legal conclusions drawn from the facts," nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkts., Inc. v. J.D. Assocs., Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000) (citation omitted).

## III.  ANALYSIS

**A.  Discrimination Claims**

Plaintiff brings her disability discrimination claims pursuant to Title II of the ADA[2] and the Rehabilitation Act.  The ADA and the Rehabilitation Act provide that no individual may be excluded from participation, by reason of her disability, from a university or other postsecondary institution.  29 U.S.C. § 794; 42 U.S.C. § 12132; Constantine v. Rectors and Visitors of George Mason Univ., 411 F.3d 474, 488 (4th Cir. 2005).  Although there are distinctions in the statutory language of the ADA and the Rehabilitation Act, the Fourth Circuit Court of Appeals has explained: "To the extent possible, we construe the ADA and the Rehabilitation Act to impose similar requirements.  Thus, despite the different language these statutes employ, they require a plaintiff to demonstrate the same elements to establish liability."  Halpern v. Wake Forest Univ. Health Sciences, 669 F.3d 454, 461 (4th Cir. 2012) (internal citations omitted).  To state a claim of disability discrimination, a plaintiff must allege "(1) [s]he has a disability, (2) [s]he is otherwise qualified to participate in the defendant's program, and (3) [s]he was excluded from the program on the basis of [her] disability."  Id. (footnote omitted) (citations omitted).

In this case, defendants do not dispute that plaintiff has a disability under the ADA and the Rehabilitation Act.  (See Defs.' Mem., DE # 12, at 10.)  Rather, defendants contend that plaintiff's discrimination claims should be dismissed because plaintiff's complaint does not adequately allege that she was qualified to continue to participate in the MSW Program, or that her disability played a role in the decision to dismiss her from the MSW Program.  (Id.)  The court will consider each of these arguments in turn.

---

[2] Plaintiff's first cause of action is labeled as disability discrimination in violation of 42 U.S.C. § 12132.  (Compl., DE # 1-1, ¶¶ 120-27.)  However, elsewhere in her complaint, plaintiff also purports to bring this claim pursuant to 42 U.S.C. § 12131 and 42 U.S.C. § 12203.  (Id. ¶ 4.)

1. **Qualified Individual**

Defendants seek dismissal of plaintiff's discrimination claims on the ground that the allegations set forth in the complaint support the conclusion that plaintiff was not otherwise qualified for continued participation in the MSW Program. (Defs.' Supp. Mem., DE # 10, at 12.) A "qualified individual" is one who, with or without reasonable accommodation, can meet the essential eligibility requirements for participation in a program or activity. Halpern, 669 F.3d at 462 (citations omitted). "A plaintiff asserting a violation of the ADA or Rehabilitation Act bears the burden of establishing that [s]he is qualified." Id. (citation omitted). To satisfy this burden, a plaintiff must show that she "could satisfy the essential eligibility requirements of the program," or, if she could not, that a "reasonable accommodation" by the defendant would allow her to meet these requirements. Id. (citing Tyndall v. Nat'l Educ. Ctrs., Inc., 31 F.3d 209, 213 (4th Cir. 1994)).

In the context of postsecondary education, a disabled person is "otherwise qualified" if she shows that she "meets the academic and technical standards requisite to . . . participation in the [school's] education program or activity." Class v. Towson Univ., 806 F.3d 236, 246 (4th Cir. 2015) (citing 45 C.F.R. § 84.3(l)(3)). Hence, if a plaintiff is unable to meet an educational program's academic or non-academic requirements, the plaintiff is not a qualified individual and, therefore, not covered under either the ADA or the Rehabilitation Act. Se. Cmty. Coll. v. Davis, 442 U.S. 397, 406 (1979). The Fourth Circuit generally accords deference to a school's professional judgment regarding whether a student can satisfy the school's essential eligibility requirements. See Halpern, 669 F.3d at 463. However, even though court must accord great respect to a school's professional judgment on these issues, it "must take care 'not to allow

8

academic decisions to disguise truly discriminatory requirements.'" Id. (quoting Zukle v. Regents of the Univ. of Cal., 166 F.3d 1041, 1048 (9th Cir. 1999)).

The Fourth Circuit has previously recognized professionalism standards as an essential aspect of eligibility for a graduate program. See Halpern, 669 F.3d at 463 (finding professionalism an essential aspect of eligibility for a medical school where professionalism was a goal of the program and the student handbook explained professionalism expectations). As plaintiff acknowledges in her complaint, the SOSW evaluates MSW candidates on their professionalism and ethical practice during field instruction, and it is also a consideration for retention in the MSW Program. (Compl., DE # 1-1, ¶¶ 19, 56-57.) Thus, plaintiff appears to concede that professionalism is an eligibility requirement for continued enrollment in the program at issue in this case. (See Pl.'s Resp., DE # 12, at 14 (referencing the "eligibility requirements of professionalism" at the SOSW).)

In her complaint, plaintiff references a number of discussions between members of the faculty regarding her manic episodes and whether her behaviors during these episodes suggested that she would have difficulty exercising professional judgment in a field setting. (Compl., DE # 1-1, ¶¶ 42-46, 50-52, 69-77.) Her complaint also alleges that the A&R Committee concluded that she could not "meet the standards and competencies required to perform as an ethical, professional, and knowlegable [sic] social worker." (Id. ¶ 99.) Defendants contend that these allegations "demonstrate that [p]laintiff's professors exercised their professional judgment in determining that she failed to meet the professional requirements of the MSW Program," and that the court should defer to this professional judgment. (Defs.' Supp. Mem., DE # 10, at 14.)

Plaintiff appears to argue that deference is inappropriate in this case because her complaint "makes it clear that she was qualified to continue in the MSW Program *without* any

9

accommodation." (Pl.'s Resp., DE #12, at 10 (emphasis in original).) Plaintiff emphasizes that, during the fall 2014 term, she received high marks for her professionalism in her field instruction course. (Compl., DE # 1-1, ¶¶ 110-11.) She acknowledges that she was not assessed on her professionalism by a member of the SOSW faculty in the spring 2015 due to the SOSW's refusal to allow her to continue at her field internship and the companion seminar. (Id. ¶¶ 54, 58.) Nevertheless, she asserts that her subsequent volunteer work at the homeless shelter, where she received high marks on her professionalism from a LCSW who assessed her work, supports her contention that she could satisfy the SOSW's professionalism expectations. (Id. ¶ 115; Pl.'s Resp., DE # 12, at 13.) She further contends that the fact she received a passing grade in Professor Yoon's class following her hospitalization shows that the faculty's concerns about her professionalism were inaccurate. (Pl.'s Resp., DE # 12, at 12, 14.)

Here, the contents the complaint show that plaintiff was able to return to both her field placement and the SOSW without relapse or any other incidents of problematic behavior after being diagnosed with and receiving treatment for Bipolar Disorder. Considering plaintiff's allegations regarding her behavioral improvements following the stabilization of her mental condition, along with the fact her psychiatrist supported her return to the SOSW, the court finds that plaintiff has sufficiently alleged that she could meet the SOSW's professionalism expectations. Thus, even adopting an appropriately deferential view, plaintiff has sufficiently alleged this element of her discrimination claims.

### 2. By Reason of Disability

Even assuming plaintiff was otherwise qualified for the MSW Program, defendants contend that plaintiff's discrimination claims should be dismissed because her dismissal from the MSW Program was based on her unprofessional conduct, not her disabilities. (Def.'s Supp.

Mem., DE # 10, at 20.) To state the third element of her discrimination claims, plaintiff must demonstrate that she was dismissed from the MSW Program "on the basis of her disability." See Constantine, 411 F.3d at 498 (citation omitted). Although the ADA and the Rehabilitation Act impose similar requirements, there are distinctions between the two statutes with respect to the causation standard. Under the ADA, a plaintiff's complaint must plead facts from which it could be plausibly suggested that her disability "played a motivating role" in her dismissal. Baird ex rel. Baird v. Rose, 192 F.3d 462, 470 (4th Cir. 1999) (citing 42 U.S.C. § 12132). The causal standard in the Rehabilitation Act is even stricter than the ADA, requiring a plaintiff to show that she was dismissed "solely by reason of" her disability. 29 U.S.C. § 794(a).

Causation Under the Rehabilitation Act

Here, the allegations in the complaint do not suggest that plaintiff's disabilities were the sole basis for her dismissal. After plaintiff began suffering some mild episodes of mania in 2014, there was discussion among the faculty concerning her changed mental state and erratic behavior. (Compl., DE # 1-1, ¶¶ 42-43, 45.) Even after taking the faculty's concerns into consideration, the A&R Committee suggested that plaintiff be retained in the program and referred her to a mental health counseling service. (Id. ¶ 51.) Plaintiff later suffered a more severe manic episode in 2015 while interacting with a faculty member, (id. ¶ 34), and thereafter missed two of her scheduled classes, (id. ¶ 82). These cumulative behaviors led the faculty to convene a second A&R Committee meeting, which plaintiff admits she failed to attend. (Id. ¶¶ 91-92.) These allegations show that the SOSW was concerned not only with plaintiff's mental illness, but also with plaintiff's escalating pattern of problematic behaviors. See Halpern, 669 F.3d at 464 (concluding that a medical school did not violate the Rehabilitation Act where it "reasonably determined based on an identifiable pattern of prior conduct that [the] student [was]

11

unfit to join his chosen profession"). The court therefore finds that plaintiff has failed to allege that her dismissal was "solely because of" her disability as required under the Rehabilitation Act.

Causation Under the ADA

With respect to the ADA claim, plaintiff argues that the alleged communications from the SOSW referenced in her complaint demonstrate that her mental condition was a motivating factor in her dismissal from the MSW Program. (Pl.'s Resp., DE # 12, at 13-14.) The court agrees. According to plaintiff, one of the reasons given for her dismissal was the faculty's "belief that [her] 'mental health difficulties' would inevitably result in both her failure of the field course and the impairment of her professional judgment." (Compl., DE # 1-1, ¶ 101.) This allegation suggests that the faculty believed that plaintiff's mental illness was a predictor of her inability to provide services to clients in a field setting. Plaintiff further claims that the SOSW did not dismiss "other students with similar [attendance] records . . . who did not suffer from mental illness," (id. ¶ 104), and only considered her failure to respond to emails during a designated break period due to her mental illness, (id. ¶¶ 88-90). These allegations suggest that the SOSW went beyond academic norms when considering plaintiff's actions, and creates a reasonable inference that plaintiff's mental illness was a motivating factor in the dismissal decision. See Baird, 192 F.3d at 470 ( finding complaint contained adequate factual allegations to state a discrimination claim under the ADA because a student, who had missed a number of show choir rehearsals due to her disability, alleged absenteeism policy had not been uniformly enforced prior to her exclusion from show choir). Consequently, plaintiff's complaint contains adequate factual allegations to state a claim under the ADA.

Defendants further argue that, even if the court determines that plaintiff has stated a discrimination claim under the ADA, she is statutorily barred from receiving monetary damages.

12

(Defs.' Supp. Mem., DE # 10, at 22.)  Monetary damages may not be awarded if a defendant "'would have taken the same action in the absence of the impermissible motivating factor.'" Baird, 192 F.3d at 470 (citing 42 U.S.C. § 2000e-5(g)(2)(B)).  "In such circumstances, relief is limited to declaratory and injunctive relief, costs, and attorney's fees."  Id.  Although the allegations in plaintiff's complaint support an inference that her unprofessional behaviors played a role in her dismissal, other allegations in the complaint cast doubt on defendants' position that plaintiff's disability did not play a role in its decision to dismiss plaintiff from the MSW Program.  Therefore, the court finds that the allegations of discrimination are sufficient to support monetary damages under the ADA.

**B. Breach of Contract Claim**

In her complaint, plaintiff also brings a state law claim for breach of contract.  Plaintiff asserts that a contract formed between herself and defendants when she was accepted into the MSW Program.  According to plaintiff, this contract allowed her to receive the MSW degree upon completion of the required courses and field placements.  (Compl., DE # 1-1, ¶ 133.)  She contends that defendants breached this contract by forbidding her from continuing at her field internship and companion seminar pending the disposition of her appeal, and by failing to award her the MSW degree.  (Id. ¶ 138.)

"The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract."  Montessori Children's House of Durham v. Blizzard, 781 S.E.2d 511, 514 (N.C. Ct. App. 2016) (citation and quotation marks omitted).  Defendants challenge plaintiff's characterization of the terms of the contract and the sufficiency of plaintiff's allegations of breach.  (Defs.' Supp. Mem., DE # 10, at 25.)  Citing to Montessori Children's House, 781 S.E.2d at 516-17, defendants note that the North Carolina Court of Appeals has

explained that a breach of contract claim against a university survives a motion to dismiss where the complaint alleges some "identifiable contractual promise" that the university failed to honor. (Defs.' Supp. Mem., DE # 10, at 26.) Defendants contend that based on the allegations in the complaint, "the only specific 'identifiable contractual promise' identified by [p]laintiff is that a provision of the ECU Graduate School Appeal Policy provides 'no adverse recommendation or action' would be effective until an appeal concluded." (Id. at 17 (citing Compl., DE # 1-1, ¶ 108).) Defendants therefore contend that plaintiff's breach of contract claim should be limited to an assessment of whether a breach of this specific promise to follow the appeal procedure occurred, and that the court should not consider the breach of contract claim to the extent plaintiff seeks to challenge the substantive decision to dismiss her from the MSW Program. (Id.)

With respect to plaintiff's claim regarding defendants' failure to allow her to continue her field course and field placement, plaintiff alleges the SOSW "promised to follow certain written rules and procedures in the event that it were to consider terminating her from the MSW Program for any reason, including without limitation academic or disciplinary reasons." (Compl., DE # 1-1, ¶ 134.) The appeal policy cited to by plaintiff can be read to contain a promise to provide her instruction and the opportunity to continue with her coursework while the dismissal decision was on appeal. This suggests an "identifiable contractual promise" between the parties that can survive a motion to dismiss under North Carolina law.

However, with respect to plaintiff's claim for breach of contract based on defendants' failure to award her a MSW degree, there are no factual allegations showing some "identifiable contractual promise" to award her a degree upon completion of the required coursework. From the contents of the complaint, it appears an A&R Committee could be convened to address concerns regarding both "academic" and "non-academic competencies." (Compl., DE # 1-1, ¶¶

14

47, 99.) The allegations in the complaint also suggest the A&R Committee's assessment could lead to a student' dismissal from the program due to inadequate performance in either academic or non-academic competencies. (Id.) These allegations indicate that the award of the MSW degree was based on the completion of academic and non-academic requirements, not merely completion of required courses and field internships. Consequently, the complaint does not support plaintiff's assertion that defendants promised to confer the MSW degree upon successful completion of her scheduled courses. The court therefore will allow plaintiff's breach of contract claim to go forward on a limited basis with regard only to the alleged failure to follow the promised procedures in the appeal process. See McFadyen v. Duke Univ., 786 F. Supp. 2d 887, 983 (M.D.N.C. 2011) (permitting plaintiff's breach of contact claim against a university to proceed only on a "limited basis with regard to the failure to follow promised procedures in the disciplinary process"), *aff'd in part*, *rev'd in part*, *dismissed in part sub nom.* Evans v. Chalmers, 703 F.3d 636 (4th Cir. 2012).

## C. Claims Against UNC

Defendants move to dismiss plaintiff's claims against UNC, arguing that plaintiff has failed to allege any wrongdoing on the part of UNC. (Defs.' Supp. Mem., DE # 10, at 27-28.) In her complaint, plaintiff alleges that UNC "is a body politic and corporate capable of being sued pursuant to N.C.G.S. § 116-3 for the actions of its constituent institutions." (Compl., DE # 1-1, ¶ 2.) Defendants emphasize that the other allegations in plaintiff's complaint focus exclusively on her dismissal from the MSW Program by ECU faculty and administrators, and do not show that UNC was aware or responsible for any of the alleged misconduct. However, ECU is a "constituent institution" of UNC. N.C. Gen. Stat. § 116-2(4). By statutory directive, UNC is "responsible for the general determination, control, supervision, management and governance of

15

all affairs of the constituent institutions." Id. § 116-11(2). Given that UNC maintains responsibility for the management of ECU and has the capacity to be sued, the court will allow plaintiff to proceed at this time with her claims against UNC. See Jean v. Bd. of Regents of Univ. Sys. of Maryland, 2013 WL 387948, at *2 (rejecting Board of Regents argument that it was not a proper defendant in a case involving alleged violations of the ADA and the Rehabilitation Act, and finding that state statutory provisions indicated the Board of Regents was a proper defendant because it "retain[ed] ultimate responsibility for the entire University System" and had the "capacity 'to sue and be sued.'" (quoting Md. Code Ann., Educ. § 12-104(b)(3)); see also Pavlovic v. Univ. of Maryland Baltimore Cty., No. MJG-13-983, 2013 WL 4775530, at *4 (D. Md. Sept. 4, 2013) (noting "the absence of appellate precedent" on the issue of whether a governing board can be held responsible for the discriminatory actions of its constituent institutions, and allowing plaintiff to proceed with claims against the board governing the University System of Maryland).

### III. CONCLUSION

For the reasons set forth above, defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. Plaintiff's discrimination claim under the Rehabilitation Act is DISMISSED. Plaintiff's discrimination claim under the ADA and state law claim for breach of contract remain.

This 1 May 2018.

                                                  W. Earl Britt
                                                  Senior U.S. District Judge