IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:17–CV–186–BR

| | |
|---|---|
| OLIVIA NEAL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| UNIVERSITY OF NORTH CAROLINA ) | |
| and EAST CAROLINA UNIVERISTY, ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on East Carolina University's ("ECU" or "defendant"[1]) motion for summary judgment. (DE # 43.) Olivia Neal ("plaintiff") filed a response in opposition, (DE # 52), to which defendant replied, (DE # 61). Thereafter, defendant filed a motion to strike certain documents appended to plaintiff's statement of facts, (DE # 59), to which plaintiff filed a response in opposition, (DE # 63), and defendant filed a reply, (DE # 64).[2] These matters have now been fully briefed and are ripe for disposition.

## I.      BACKGROUND

This action challenges plaintiff's dismissal from the ECU School of Social Work master's program during the Spring 2015 semester. Prior to becoming a student in this program, Plaintiff received her undergraduate degree from the University of North Carolina-Chapel Hill.[3] (Pl.'s Resp. Def.'s Statement of Material Facts, DE # 50, ¶ 5.) Plaintiff started at the ECU

---

[1] The University of North Carolina was voluntarily dismissed as a defendant. (DE # 24.)
[2] Defendant moves to strike some attachments provided by plaintiff in her appendix to her statement of facts. (DE # 59.) This evidence does not alter the court's analysis of defendant's motion for summary judgment. As such, that evidence is considered properly submitted and defendant's motion to strike will be denied.
[3] While she was an undergraduate student, plaintiff received a disability accommodation for Attention Deficit Hyperactivity Disorder. (Pl.'s Dep., DE # 54-3, at 813:3–18.) As a graduate student at ECU, she did not request such an accommodation, (Pl.'s Dep., DE # 54-3, 736:6–8), and does not contend she was discriminated against due to this disability, (see generally Pl.'s Resp. Opp'n, DE # 52).

School of Social Work in Fall 2012 as a full-time student, regular track, under provisional admission status, seeking to obtain a Master's in Social Work ("MSW"). (Id. ¶ 6.) Plaintiff did not request any disability accommodations upon her admission to the School of Social Work. (Id. ¶ 52.) While she attended the school, plaintiff's professors included Nancy Pierson ("Pierson"), Dr. Lena Carawan ("Dr. Carawan"), and Dr. Intae Yoon ("Dr. Yoon"). (Id. ¶ 14.) Additionally, Dr. Kerry Littlewood ("Dr. Littlewood") was the school's program coordinator during this time. (Id.)

At ECU's School of Social Work, students are held to the same ethical standard as licensed social workers—the National Association of Social Workers ("NASW") Code of Ethics. (Id. ¶ 35.) Students are apprised of this ethical standard when they receive the school's Field Manual, (id. ¶ 37), and Social Work Field Education Application Information Sheet, (id. ¶12). The Social Work Field Education Application Information Sheet also apprises students of the Department of Disability Support Services for disability accommodations. (Id. ¶ 52.) Plaintiff signed two application information sheets, one in October 2012 and the other in March 2013. (Id. ¶¶ 12, 13.) Plaintiff understood the NASW Code of Ethics applied to her while at ECU. (Id. ¶ 42.) Relevant here, the Code includes a section on impairment, providing

> social workers should not allow their own personal problems, psychosocial distress, legal problems, substance abuse, or mental health difficulties to interfere with their professional judgment and performance or to jeopardize the best interest of people for whom they have a professional responsibility.

(Id. ¶ 39.)

In October 2013, plaintiff voluntarily withdrew from the School of Social Work. (Id. ¶ 59.) According to ECU, plaintiff became withdrawn from her field placement, began missing classes, and then voluntarily withdrew from the program. (Pl.'s Ex. 2 App., DE # 54-2, at 223.) Plaintiff claims she withdrew from the program because she was traumatized by a patient's

2

attempted suicide at her field placement. (See Pl.'s Dep., DE # 54-3, at 864–65.) Around the time of her withdrawal, plaintiff was hospitalized as she was suffering from acute psychosis. (Pl.'s Resp. Def.'s Statement of Material Facts, DE # 50, ¶ 60.) In the Spring of 2014, plaintiff re-enrolled in ECU's School of Social Work. (Id. ¶ 62.) At that time, she did not request any disability accommodation. (Id.)

During the Fall 2014 semester, plaintiff's field placement—a school-sanctioned clinical internship—was at the House of Fordham. (Id. ¶ 68.) There, plaintiff's Field Instructor was Michael Herring ("Herring"), but he resigned from this role during the semester. (Id.) Herring reported to ECU that he terminated this role because of plaintiff's "lack of engagement in supervision," namely that she was tardy, distracted, off topic, and on her phone. (Pierson Decl., DE # 45-7, ¶ 6; see also Carawan Decl., DE # 45-11, ¶12.)

Also during the Fall 2014 semester, plaintiff was enrolled in Dr. Carawan's Field Instruction II course. (Carawan Decl., DE # 45-11, ¶ 11.) In that course, plaintiff repeatedly used her cell phone, left class for 10-15 minutes at a time, did not timely respond to emails, and turned assignments in late. (Id.) Some of plaintiff's classmates voiced concerns to Dr. Carawan about plaintiff's behavior and she separated her class into two sections, so those students did not have to be with plaintiff. (Id.) Additionally, plaintiff took Dr. Yoon's Advanced Practice Community Partnership class. (Yoon Decl., DE # 45-5, ¶ 10.) In that class plaintiff participated in team assignments. (Id.) Dr. Yoon states that other students came to him to express that she was not listening to other teammates, was dominating the conversation, unwilling to negotiate, and failed to complete her assigned duties. (Id.) Both Drs. Carawan and Yoon characterize plaintiff's conduct in their courses as disruptive, unprofessional, and inappropriate. (Id. ¶¶ 9, 10; Carawan Decl., DE # 45-11, ¶ 11.)

3

In October 2014, plaintiff was arrested for simple assault and referred to the ECU Office of Student Rights and Responsibilities ("OSRR"). (Pl.'s Resp. Def.'s Statement of Material Facts, DE # 50, ¶¶ 73, 74.) Plaintiff was directed to attend an Admission and Retention ("A&R") Committee Meeting with Professor Pierson, Dr. Littlewood, and Dr. Carawan the next day. (Id. ¶ 75.) The meeting was to determine whether plaintiff was able to continue in the program, to address her disruptive behavior, and to notify her that her failure to improve could result in termination from ECU's School of Social Work. (Littlewood Decl., DE # 45-9, ¶ 11.) Plaintiff was allowed to continue in the program, and it was decided that Professor Pierson should replace Herring as plaintiff's Field Instructor at the House of Fordham for the remainder of the Fall 2014 and the Spring 2015 semesters. (Id.; Pl.'s Resp. Def.'s Statement of Material Facts, DE # 50, ¶ 78.) After the meeting, Professor Pierson and Dr. Carawan helped plaintiff with her missing assignments. (Pl.'s Resp. Def.'s Statement of Material Facts, DE # 50, ¶ 79.) Plaintiff completed the Fall 2014 semester with a cumulative GPA of 3.94. (Pl.'s Ex. 1 App., DE # 54-1, at 192-93.)

During the Spring 2015 semester, plaintiff was enrolled in Dr. Yoon's Integrative Seminar. (Yoon Decl., DE # 45-5, ¶ 11.) Plaintiff was routinely 10 to 20 minutes late to class, which resulted in her disturbing other students' presentations, and she often turned in her assignments in late. (Id. ¶¶ 11, 12.) That semester plaintiff was also enrolled in Dr. Carawan's Field Instruction III course. (Carawan Decl., DE # 45-11, ¶ 15.) Plaintiff would often turn assignments in late or not at all and twice missed class. (Id.)

On 10 February 2015, Professor Pierson met with plaintiff in her office. (Pierson Decl., DE # 45-7, ¶ 9.) There, plaintiff was distracted and off topic and often moving about the room. (Id.) That afternoon, there was an incident between plaintiff and Dr. Yoon in his office. Dr.

4

Yoon reported that plaintiff came to his office for a visit in which she spoke about her boyfriend, financial difficulties, a bad relationship with her parents, and her plan to attend law school in California. (Yoon Decl. DE # 45-5, ¶ 13.) He recounts that she yelled at him, pointed her finger at him, and that he became concerned about her safety and that she might harm herself. (Id. ¶¶ 14, 15) The visit lasted about two hours. (Id. ¶ 13.) Professor Pierson witnessed plaintiff's behavior in Dr. Yoon's office and "was able to interject," taking plaintiff to her office where she remained "about an hour until she appeared calm." (Pierson Decl., DE # 45-7, ¶ 15.)

On 21 February 2015, plaintiff sent an email to the OSRR, copying Professor Pierson, Dr. Carawan, and Dr. Littlewood, among others, writing in part that she was "really tired, and sick and tired, and actually exhausted, with getting emails of this nature. Could one of you, or ANY of you, try to explain this to me?" (Carawan Decl., DE # 45-11, ¶ 16; Littlewood Decl., DE # 45-9, ¶ 15.) On 25 February 2015, plaintiff called Professor Pierson. (Pierson Decl., DE # 45-7, ¶ 16.) During their conversation, plaintiff claimed people were out to get her and "her speech was rapid and pressured, disorganized, jumping from topic to topic and difficult to follow." (Id.) Plaintiff told Professor Pierson "to shut up and listen to her." (Id.) That evening, plaintiff sent a video to about 30 people, including Professor Pierson and Dr. Carawan, in which she was yelling and upset. (Pl.'s Resp. Def.'s Statement of Material Facts, DE # 50, ¶¶ 100-01; Carawan Decl., DE # 45-11, ¶ 17.)

Professor Pierson states that from 12 February to 16 March 2015 plaintiff should have had at least four supervisory sessions with her regarding her field internship, but she had none. (Pierson Decl., DE # 45-7, ¶ 12.) Professor Pierson states that the week of 10 March 2015 was spring break, and during such a time, field internships continue unless other arrangements are made. (Id. ¶ 11.) "Due to [plaintiff's] absence from supervision, lack of regular communication,

5

and her unwillingness to acknowledge and address her unprofessional behaviors," Professor Pierson notified Dr. Littlewood that she (Professor Pierson) was no longer willing to serve as plaintiff's Field Instructor. (Id. ¶ 17.)

On 26 February 2015, plaintiff was in a car accident, (Compl., DE # 1-1, ¶ 80), and then involuntarily committed to a mental health facility, (Pl.'s Resp. Def.'s Statement of Material Facts, DE # 50, ¶ 106). During this hospitalization, plaintiff was diagnosed with bipolar disorder. (Compl., DE # 1-1, ¶¶ 35, 80.) A week later, plaintiff's father informed Professor Pierson that plaintiff had been in a car accident and that she was hospitalized as a result. (Pl.'s Ex. App., DE # 54-1, at 227.) He did not state that her hospitalization was an involuntary mental health commitment. (See id.; Pl.'s Resp. Def.'s Statement of Material Facts, DE # 50, ¶ 106.) Further, "[p]laintiff did not ask for an accommodation in order to miss class while she was in the hospital[.]" (Pl.'s Resp. Def.'s Statement of Material Facts, DE # 50, ¶ 134.)

Between the time of the incident in Dr. Yoon's office and early March 2015, ECU's School of Social Work faculty exchanged emails about plaintiff's behavior and her general well-being. (See generally Pl.'s Ex. 1 App., DE # 54-1, at 194–285.) The faculty expressed concerns about the "episode" she had in Dr. Yoon's office, (id. at 194, 208), including that they were worried about her "mental health condition," (id. at 201, 210); that her behavior was "manic," (id. at 205); that they could not pretend she is "functioning ok[ay]," (id. at 211); and, moreover, that they could refer her (again) to the counseling service ECU Cares, (id. at 200–01).

On 13 March 2015, Dr. Littlewood sent plaintiff an email informing her of an A&R Committee Meeting on 16 March 2015 at 9:00AM and that her attendance was mandatory to continue in the MSW program. (Pl.'s Resp. Def.'s Statement of Material Facts, DE # 50, ¶ 112.) Plaintiff did not attend the meeting because she did not have email access until 5:15PM that day.

6

(Id. ¶ 133; see also Pl.'s Ex. 1 App., DE # 54-1, at 278.)  At the meeting, the Committee decided to dismiss plaintiff from the program.  (Littlewood Decl., DE # 45-9, ¶ 16; Pierson Decl., DE # 45-7, ¶ 18; see also Yoon Decl., DE # 45-5, ¶ 18.)

The next day, plaintiff and her parents met with Dr. Littlewood and Professor Pierson. Plaintiff provided a letter from her treating psychiatrist, Dr. J. Gray McAllister, III, stating he "support[s] her returning to normal school activities."  (Pl.'s Ex. 4 App., DE # 54-4, at 44; see also Compl., DE # 1-1, ¶ 96.)   Dr. Littlewood provided plaintiff a letter notifying her of her dismissal from the program.  (Littlewood Decl., DE # 45-9, ¶ 23; Pierson Decl., DE # 45-7, ¶ 19.)  The letter states, "[T]he Committee agrees that you have failed to meet the standards and competencies required to perform as an ethical, professional, and knowledgeable social worker, despite our attempts to remediate with you."  (Pl.'s Ex. 2 App., DE # 54-2, at 222).  It details the reasons for this conclusion, detailing specific instances of plaintiff's conduct.  (See id. at 222-24.)  In conclusion, it states, "Your lengthy absences, tardy attendance, and impairment as defined by the [NASW Code of Ethics], despite the fact that the Program has twice before addressed similar concerns with you and attempted to remediate, leave us with no choice but to terminate your participation, and dismiss you from the MSW program."  (Id. at 224).

Upon plaintiff's dismissal, plaintiff was removed from Dr. Carawan's class, (Carawan Decl., DE # 45-11, ¶19), and Professor Pierson notified plaintiff's supervisor at the House of Fordham that ECU had terminated plaintiff's internship, (Pierson Decl., DE # 45-7, ¶ 23). Nonetheless, plaintiff continued her field work at the House of Fordham, performing "exceptionally" and without "any instances of inappropriate or unprofessional words or action." (Burroughs Decl., DE # 54-4, ¶ 17; see also Tyndall Decl., DE # 54-4, ¶¶ 22, 24.)  Also, Dr. Yoon permitted plaintiff "to continue in [his] class because it did not involve any client contact."

(Yoon Decl., DE # 45-5, ¶ 19.) Plaintiff would have received a passing grade, C, in the class. (See id., Ex. B, at 29-30.) Dr. Yoon did not, however, enter a grade for plaintiff due to her dismissal from the program. (Id. ¶ 19.)

Plaintiff appealed her dismissal through ECU's internal appeals process. (Pl.'s Resp. Def.'s Statement of Material Facts, DE # 50, ¶ 165.) The review panel consisted of two non-social work professors and one graduate student. (Id. ¶ 168.) The panel members met six times and reviewed plaintiff's written documentation, including (1) a second letter from Dr. McAllister which disclosed plaintiff's bipolar disorder and states plaintiff's "symptoms are under control" and plaintiff can "continue her coursework" and (2) reports about her performance at the House of Fordham. (Id. ¶¶ 166, 169; Def.'s Dep. Ex. 30, DE # 45-2, at 153-223.) Also before making its recommendation, the review panel met with the professors involved, plaintiff, and her attorney. (Pl.'s Resp. Def.'s Statement of Material Facts, DE # 50, ¶¶ 169-70.) The review panel recommended to the Dean of ECU's Graduate School that plaintiff's appeal be denied, and, after reviewing the record and conferring with another dean and the Provost and Senior Vice Chancellor for Academic Affairs, the Dean concurred with this recommendation. (Id. ¶¶ 171, 173; see also Gemperline Decl., DE # 45-14, ¶¶ 15-16.)

Plaintiff alleges she was dismissed from ECU on the basis of a disability and asserts claims against it under the Rehabilitation Act and Americans with Disabilities Act ("ADA"), as well as for breach of contract. (Compl., DE # 1-1.) ECU filed a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (DE # 9.) The court granted the motion in part and denied it in part. (DE # 16.) Specifically, the court dismissed plaintiff's discrimination claim under the Rehabilitation Act, allowed plaintiff's discrimination claim under

8

the ADA to proceed, and allowed plaintiff's state law claim for breach of contract to remain as to ECU's alleged failure to follow its internal appeal process. (Id.)

ECU filed this motion for summary judgment arguing that it did not discriminate against plaintiff based upon her bipolar disorder and that plaintiff's breach of contract claim fails as a matter of law. (Mem. Supp. Mot. Summ. J., DE # 46, at 3.) Plaintiff responded in opposition, contending the ECU faculty who terminated her perceived her as having a mental impairment and the decision to dismiss her from the program was arbitrary and in fact discriminatory. (Pl.'s Resp. Opp'n, DE # 52, at 4, 8.) She further responds that ECU violated promised procedures contained in its internal appeal policy and therefore her breach of contract claim should be permitted to proceed. (Id. at 16.)

## II. DISCUSSION

### A. Standard of Review

Summary judgment is appropriate when the record as a whole reveals no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment initially must demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists. Anderson, 477 U.S. at 249. In

making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

**B.     ADA**

The ADA provides that no qualified individual may be excluded from participation, by reason of a disability, in a program of a public entity, such as a university or other postsecondary institution. 42 U.S.C. § 12132.

> In the context of a student excluded from an educational program, to prove a violation of [the ADA], the plaintiff must establish that (1) [they have] a disability, (2) [they are] otherwise qualified to participate in the defendant's program, and (3) [they were] excluded from the program on the basis of [their] disability.

Halpern v. Wake Forest Univ. Health Scis., 669 F.3d 454, 461 (4th Cir. 2012) (citations and footnote omitted).

A "disability" is: "(A) a physical or mental impairment that substantially limits one or more of major life activities . . .; (B) a record of such an impairment; or (C) being regarded as having such an impairment[.]" 42 U.S.C. § 12102(1). Plaintiff claims she is regarded as disabled under subsection (C). (See Pl.'s Resp. Opp'n, DE # 52, at 3-4.)

> An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

Id. § 12102(3)(A). The court assumes, without deciding, plaintiff has come forward with sufficient evidence showing ECU regarded her as having a mental impairment so as to meet the first element of her ADA claim.

Next, a plaintiff is a "qualified individual" under the ADA if she "with or without reasonable modifications to rules, policies, or practices, . . . meets the essential eligibility requirements for participation in a program or activity." Halpern, 669 F.3d at 462 (citation

omitted) (omission in original). The plaintiff bears the burden of establishing "(1) that [s]he could satisfy the essential eligibility requirements of the program, i.e., those requirements that bear more than a marginal relationship to the program at issue, and (2) if not, whether any reasonable accommodation by the defendant would enable the plaintiff to meet these requirements." Id. (citation, alterations, and footnote omitted). "In the context of postsecondary education, a disabled person is qualified if [s]he shows that [s]he meets the academic and technical standards requisite to admission or participation in the school's education program or activity." Class v. Towson Univ., 806 F.3d 236, 246 (4th Cir. 2015) (citation and alteration omitted).

Generally, "great respect" is afforded a university's professional judgment regarding essential eligibility requirements and student qualifications because courts are not well equipped to evaluate a student's performance. Halpern, 669 F.3d at 463. However, the court "must take special care to ensure that eligibility requirements do not disguise truly discriminatory requirements." Class, 806 F.3d at 246 (citation omitted).

At the outset, plaintiff argues any deference accorded to ECU should be limited because the faculty's determination that she did not meet the standards necessary to ethically and professionally practice social work was arbitrary. In support of this argument, plaintiff relies on the fact that there is no evidence that she engaged in any inappropriate or unprofessional conduct in her field work with clients or others. She argues that rather than look at her behavior in the field, ECU made its decision based "solely on the events of two days, February 10, and February 25." (Pl.'s Resp. Opp'n, DE # 52, at 10.) She also questions the enforcement of ECU's attendance policy and its failure to consider any evidence after the decision was made to dismiss her from the program. (See id. at 11-13.)

11

As detailed in plaintiff's dismissal letter, and supported by the evidence in the record, ECU's conclusion about plaintiff's ability to perform as a social worker (prompting her dismissal from the program) was based on multiple instances of her conduct, in and outside of the campus setting. Furthermore, the review panel reviewed the written documentation plaintiff submitted after her dismissal, including documentation about her performance at the House of Fordham, and even met with plaintiff and her attorney, all before making its recommendation to the Dean. Contrary to plaintiff's argument, ECU's determination was evidence based, and the court may give the faculty's judgment appropriate deference.

Turning to the merits, plaintiff argues that she is qualified to participate in ECU's MSW program, without accommodation, because she was in good academic standing when she was dismissed and overcame her absences from the Spring 2015 semester. (Id. at 13-14.) It is undisputed that plaintiff had an excellent GPA prior to that semester. Even assuming, as plaintiff suggests, she would have made no grade below a C in the Spring 2015 semester, being in good academic standing is not the only requirement for participation in ECU's School of Social Work. "MSW students must exhibit professionalism, self-awareness, and good decision-making in their dealings with professors and other students. Students who fail to consistently display these characteristics . . . have failed to meet the academic requirements of the Program and face dismissal." (Pl.'s Resp. Def.'s Statement of Material Facts, DE # 50, ¶ 11; see also Littlewood Decl., DE # 45-9, ¶ 19.) The ECU faculty are in the best position to determine whether plaintiff is qualified to continue in the program. See Shin v. Univ. Md. Med. Sys. Corp., 369 F. App'x 472, 480 n.16 (4th Cir. 2010) ("One may achieve high marks throughout one's education and still not be able to perform the essential functions of a job."); Halpern, 669 F.3d at 463-64 (deferring to faculty's opinion that the medical student plaintiff could not satisfy the school's

professionalism requirement and holding the plaintiff was not otherwise qualified, absent an accommodation). Their determination that plaintiff had failed to meet the competencies necessary to successfully perform as a social worker is supported by the evidence. Accordingly, plaintiff cannot show she is otherwise qualified to participate in ECU's MSW program.

Although the court could conclude its analysis here, it also considers whether plaintiff can satisfy the third element of her ADA claim—that she was excluded from the program on the basis of her disability. "[T]he ADA requires only that the disability was 'a motivating cause' of the exclusion." Halpern, 669 F.3d at 461 (citation omitted).

As previously recognized, plaintiff's dismissal letter provides a lengthy list identifying the specific instances of misconduct on which the A&R Committee based its decision. It is clear her dismissal was not for conduct on just two days, but ongoing behavioral issues as perceived by her professors. Plaintiff relies on the fact that the faculty believed or perceived plaintiff was "impaired by mental illness" as set forth in emails amongst themselves and by the reference in her dismissal letter to her impaired functioning as defined in the NASW Code of Ethics. (Pl.'s Resp. Opp'n, DE # 52, at 15.) That the faculty thought plaintiff was mentally impaired, without more, does not mean plaintiff's mental disability played a motivating role in her dismissal from the program. "[M]isconduct—even misconduct related to a disability—is not itself a disability and may be a basis for dismissal." Halpern, 669 F.3d at 465 (citation omitted); see also Haulbrook v. Michelin N. Am., Inc., 252 F.3d 696, 703–04 (4th Cir. 2001) ("The fact that an employer is aware of an employee's impairment, without more, is 'insufficient to demonstrate . . . that perception caused the adverse employment action.'" (citation and footnote omitted)). "Where a professional school has reasonably determined based on an identifiable pattern of prior conduct that a student is unfit to join h[er] chosen profession, federal law does not obligate the

13

Case 5:17-cv-00186-BR   Document 65   Filed 09/28/20   Page 13 of 16

school to allow that student to remain in and graduate from its educational program." Halpern, 669 F.3d at 466–67. Plaintiff cannot establish that she is qualified to participate in the MSW program or that ECU dismissed her from the program on the basis of her disability, and therefore, the court will grant summary judgment as to her ADA claim.

### C. Breach of Contract

ECU contends plaintiff has failed to present evidence of a valid contract between them. (See Mem. Supp. Mot. Summ. J., DE # 46, 29–30.) In response, plaintiff contends her breach of contract claim should not be dismissed for the reasons stated in the court's previous order and ECU's inability to distinguish the case cited therein, namely McFadyen v. Duke Univ., 786 F. Supp. 2d 887, 983 (M.D.N.C. 2011), aff'd in part, rev'd in part, dismissed in part sub nom, Evans v. Chalmers, 703 F.3d 636 (4th Cir. 2012). (See Pl.'s Resp. Opp'n, DE # 52, at 16.)

In its order allowing plaintiff's breach of contract claim to proceed, the court stated:

> With respect to plaintiff's claim regarding defendants' failure to allow her to continue her field course and field placement, plaintiff alleges the [School of Social Work] "promised to follow certain written rules and procedures in the event that it were to consider terminating her from the MSW Program for any reason, including without limitation academic or disciplinary reasons." The appeal policy cited to by plaintiff can be read to contain a promise to provide her instruction and the opportunity to continue with her coursework while the dismissal decision was on appeal. This suggests an "identifiable contractual promise" between the parties that can survive a motion to dismiss under North Carolina law. . . . The court therefore will allow plaintiff's breach of contract claim to go forward on a limited basis with regard only to the alleged failure to follow the promised procedures in the appeal process.

(Order, DE # 16, at 14–15 (internal citations omitted).) While plaintiff may have adequately pled a claim pursuant to Federal Rule of Civil Procedure 8 to survive a motion to dismiss, the standard for summary judgment requires a different level of scrutiny to determine whether there is a genuine issue of material fact precluding summary judgment. See Reyes v. Waples Mobile

14

Case 5:17-cv-00186-BR   Document 65   Filed 09/28/20   Page 14 of 16

Home Park Ltd. P'ship, 903 F.3d 415, 423 (4th Cir. 2018) (setting forth the differing standards between a motion to dismiss and a motion for summary judgment).

> The Graduate Catalog, the alleged contract on which plaintiff relies, clearly states,
>
> The university's graduate catalogs are for information purposes only and do not constitute a contractual agreement between a student and [ECU]. The university reserves the right to make changes in . . . academic regulations at any time when, in the judgment of the graduate faculty, the chancellor, or the Board of Trustees, such changes are in the best interest of the students and the university.

(Gemperline Decl., Ex. C, DE # 45-14, at 33.) This catalog is more similar to the student handbook at issue in Shaw v. Elon Univ., 400 F. Supp. 3d 360, 368 (M.D.N.C. 2019), as opposed to the student bulletin in McFadyen, 786 F. Supp. 2d at 983. In Shaw, the court found the university handbook did not constitute an enforceable contract, relying on the university's reservation of its right to unilaterally modify the procedures in the handbook and on other language in the handbook evincing the university's intent not to be bound. 400 F. Supp. 3d at 369. Additionally, plaintiff has not come forward with any agreement between her and ECU that specifically incorporates any provisions of the Graduate Catalog. Without such evidence, her breach of contract claim fails. See Chandler v. Forsyth Tech. Cmty. Coll., 294 F. Supp. 3d 445, 459 (M.D.N.C.) (summarizing cases applying relevant North Carolina law and holding the plaintiff student had not sufficiently alleged the existence of a contract based upon the university handbook without a contract specifically incorporating the policies and procedures outlined in that document), aff'd, 739 F. App'x 203 (4th Cir. 2018). Therefore, ECU's motion for summary judgment on this claim will be granted.

### III. CONCLUSION

For the foregoing reasons, defendant's motion to strike is DENIED and defendant's motion for summary judgment is ALLOWED.  The clerk is DIRECTED to enter judgment and close the case.

This 28 September 2020.

_____
W. Earl Britt
Senior U.S. District Judge